**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Charles R. ROBINSON IV,**
**Defendant–Appellant.**

No. 98–2402.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 13, 1998.

Decided Jan. 12, 1999.

Rehearing and Suggestion for Rehearing
En Banc Denied Feb. 16, 1999.

Stephen A. Kubiatowski (argued), Office of the United States Attorney, Springfield, IL, for Plaintiff–Appellee.

Jon G. Noll, Richard Kim (argued), Springfield, IL, for Defendant–Appellant.

Before BAUER, RIPPLE, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Charles Robinson IV raises four issues on this appeal but emphasizes one: He claims the district court assigned too much crack cocaine to him under the relevant conduct calculus of the federal sentencing guidelines and, as a result, the sentence he received is too high. He is right about one thing—his sentence is very high, as a term of imprisonment of 100 years was ordered. We think there's merit to the issue Robinson stresses, and for that reason we vacate his sentence and remand the case for further proceedings.

Robinson went to trial on a three-count indictment in December of 1997. The indictment charged one count of possession of both cocaine and cocaine base with intent to distribute, one count of possession of only cocaine base with intent to distribute, and one count of simple possession of cocaine base. He was convicted on all three counts.

At sentencing, the district judge appropriately relied on the evidence he heard during the trial and information included in the presentence report prepared by the United States Probation Office in arriving at Robinson's sentencing range under the federal sentencing guidelines. The judge pegged Robinson's base offense level at 38, the absolute top of the ladder for drug offenders under the guidelines. To this finding the judge added 2 points because one of Robinson's underlings (Gina Loonsfoot) carried a firearm while transporting drugs, U.S.S.G. § 2D1.1(b)(1); 4 points because Robinson was an "organizer," etc., of five or more underlings, U.S.S.G. § 3B1.1(a); and 2 points because Robinson obstructed justice, U.S.S.G. § 3C1.1. This brought him to level 46, three grades higher than the maximum level of 43. Level 43, the level that was used, calls for a life sentence across the board without regard to an offender's placement in a criminal history category. Because life is not called for in the statutory penalties for Robinson's counts of conviction—40, 40, and 20 years are the maximums—those sentences were imposed, and they were ordered to be served consecutively. Robinson will be "eli-

gible" for release in 2083, when he's 120 years old.

Level 38 is reserved for big-time drug offenders who are involved with huge quantities: more than 30 kilos of heroin, 150 kilos of cocaine, and 30,000 kilos (a whopping 33 tons) of marijuana. A much smaller quantity of cocaine base (crack, as it's called on the street)—1.5 or more kilos—also drops an offender in level 38.

In putting Robinson in level 38 the district judge converted his cocaine quantities into marijuana using the guidelines' "Drug Equivalency Tables." He did so, appropriately again, because two different drugs—powder and crack cocaine—were involved. Here is how the quantity was determined:

| Source | Drug Table | Amount | Marijuana Equivalency |
|---|---|---|---|
| Count 1 | Powder cocaine | 27.6 grams | 5.52 kilos |
| Count 1 | Crack | 16.8 grams | 336.00 kilos |
| Count 2 | Crack | 2.1 grams | 42.00 kilos |
| Count 3 | Crack | 14.0 grams | 280.00 kilos |
| From David Alton | Crack | 56.7 grams | 1,134.00 kilos |
| From Michael Smith | Crack | 54.0 grams | 1,080.00 kilos |
| From Gina Loonsfoot | Crack | 5,103.0 grams | 102,060.00 kilos |

Total marijuana equivalency:104,937.52 kilos

Robinson's powder cocaine accounts for a mere .000053 percent of the total so, for simplicity sake, we'll drop it from the picture and concentrate on the crack, which also allows us to ditch, entirely, the equivalency table. Taking it one step at a time, Robinson's crack on his three counts of conviction totals only 32.9 grams (2.1 + 14 + 16.8), or just a tad over an ounce, about the weight of an envelope that can be sent through the mail for the cost of a 32–cent stamp. If this were all the crack chargeable to Robinson, his base offense level would be 28 (20 grams but less than 35). To this amount the judge added 56.7 grams of crack based on statements made by David Alton, which brought Robinson's total to 89.6 grams, a total that puts him in base offense level 32. To this we can add the 54 grams attributed by the judge to the statements of Michael Smith, which brings the total to 143.6 grams, still a level 32 placement which tops out at 150 grams. But now comes the sledgehammer—a massive 5,103 grams attributed to statements made by Ms. Loonsfoot. This figure, 97 percent of Robinson's total relevant conduct, propelled him into level 38, a spot one usually thinks of as being reserved for the kind of big-time drug dealers depicted in "The French Connection."

We review deferentially, looking only for clear error, a district court's calculation of drug quantities under the guidelines. *United States v. McClinton*, 135 F.3d 1178 (7th Cir.1998). And a sentencing judge can consider a wide range of information in reaching sentencing determinations provided it is reliable or, as we have said, provided it includes "sufficient indicia of reliability to support its probable accuracy." *United States v. Taylor*, 72 F.3d 533, 543 (7th Cir. 1995). While it's not required that a judge hear personally from witnesses under oath at a sentencing hearing about drug quantities, we think it's not a terribly bad idea to do so when the witness is going to provide the basis for, as here, 97 percent of a defendant's relevant conduct. Ms. Loonsfoot, the vehicle that skyrocketed Robinson into level 38, did not testify at the sentencing proceeding or, for that matter, at the trial. Her information came to the judge, untested by cross-examination, through the presentence report. And her statements, considering the gravity of their consequences, give us pause.

Loonsfoot's statements in the presentence report come from information taken from "Illinois State Police Investigative" reports that "summarize interviews" with her. According to the PSR, Loonsfoot said Robinson was "selling one-sixteenth ounce quantities of crack cocaine for $100.00 and one-eighth ounce quantities of crack cocaine for $250.00 or $275.00."

This statement makes no sense at all. While we can accept the proposition that

people involved with crack cocaine might not be very bright, we don't believe we can assume they are necessarily stupid, especially in matters of finance. Why Robinson's customers, if Loonsfoot is to be believed, would pay more money for their drugs as the quantities they purchase goes up defies common sense. And this observation colors our view of Loonsfoot's statements about quantities sold as well.

Based on Loonsfoot's statements, as recounted from the Illinois State Police reports, the probation officer estimated that Robinson was distributing 3 ounces (85.05 grams) of crack a day for 60 days. And this—voila—comes out to 5,103 grams of crack, an astonishing amount considering that the hard evidence—the three counts of conviction—only came up with a grand total of 32.9 grams.

We think, even viewed deferentially, that the Loonsfoot statements fail to establish the kind of "indicia of reliability" upon which a sentencing judge could comfortably rely. For that reason, we think a new and more critical look at Robinson's relevant conduct is required.

In remanding this case for resentencing, we make one final observation. As we previously noted, the district court concluded, with enhancements, that Robinson had a score that would put him in base offense level 46, if that were possible. So Robinson will have to then jettison several points to get below level 43, and he can do so only if he keeps his relevant conduct no higher than level 34, which covers between 150 and 500 grams of crack. If he can limit his relevant conduct to that level (and that's as good as he can get, because his status as a career offender puts him at level 34), the best he can do is a final level of 42. Ordinarily, a 1–level change in a base offense level is fairly insignificant for the sentencing ranges overlap (e.g., the range for level 24 is 51 to 63 months and for 25 it's 57 to 71 months) all the way up to 42. But the difference between 42 and 43 can be gigantic. It is conceivable here that Robinson, if he can get in level 42, can get a

sentence 70 years less than the one he first received. And that potential underscores the importance of a firm "indicia of reliability" in Ms. Loonsfoot's account of Robinson's drug dealing activities.

The judgment of conviction is AFFIRMED [1] and the sentence is VACATED. The case is REMANDED for further proceedings consistent with this opinion.

---

1. Robinson's other issues on appeal are meritless. Having reviewed the record, we conclude that the evidence adduced at his trial was more than sufficient to support the jury's guilty verdicts. And the sentencing judge did not err in

invoking the gun or role-in-the-offense enhancements. Finally, the testimony at trial clearly established that Robinson distributed crack, not some less devastating species of cocaine.