UNITED STATES of America,
Plaintiff,

v.

Charles R. ROBINSON, IV, Defendant.

No. 97–30025.

United States District Court,
C.D. Illinois,
Springfield Division.

Dec. 7, 1999.

Gregory M. Gilmore, Springfield, IL, for plaintiff.

Howard W. Feldman, Jon Gray Noll, Springfield, IL, for defendant.

## OPINION

RICHARD MILLS, District Judge.

Although a sentence of 100 years is very high, it is the sentence which Robinson, through his criminal activity, has earned.

It is the sentence for which the Sentencing Guidelines provide.

And, it is the sentence which this Court must reimpose.

## I. PRELIMINARY ISSUES

This matter is before the Court following Charles R. Robinson, IV's, re-sentencing hearing. Before the Court could re-sentence Robinson, however, it had to resolve a few preliminary matters.

*First,* prior to the hearing, Robinson's counsel moved to withdraw his representation of Robinson. In his motion, Robinson's counsel represented that Robinson had asked him to file a motion to withdraw his representation based upon their inability to communicate and the current lack of trust between the two.

However, at the hearing, Robinson's counsel moved to withdraw his motion to withdraw his representation. Robinson's counsel informed the Court that Robinson's differences with him had been resolved and that Robinson wanted him to remain as his counsel during the re-sentencing hearing. Upon direct inquiry from the Court, Robinson confirmed that he wanted his current counsel to continue to represent him and his interests at the re-sentencing hearing. Accordingly, the Court allowed Robinson's counsel's motion to withdraw his motion to withdraw his representation of Robinson.

*Second,* on October 28, 1999, the Court received a courtesy copy of a pleading entitled "Petition for Extraordinary Writ" which Robinson, acting *pro se,* filed with the United States Supreme Court. In essence, Robinson asked the Supreme Court to issue a writ of mandamus instructing this Court to recuse itself and to transfer his re-sentencing hearing to another district judge. Robinson has previously filed motions with this Court asking it to recuse itself, and the Court has denied those requests because the Court is not actually biased against him and because the Court's impartiality cannot reasonably be questioned in this matter. 28 U.S.C. § 144 & § 455(a). Robinson has also previously asked the United States Court of

Appeals for the Seventh Circuit to issue a writ of mandamus disqualifying this Court from conducting his re-sentencing hearing, but the Seventh Circuit has denied his request. Because the Court has not received any instruction from a higher court to the contrary, the Court proceeded with Robinson's re-sentencing hearing.

*Third,* both Robinson, acting *pro se,* and his attorney, acting on his behalf, asked the Court to revisit all of the issues surrounding his original sentence. Specifically, Robinson and his counsel asked the Court to find that he does not qualify as a career criminal, that he should not receive a two level enhancement for possessing a firearm in relation to his drug dealing, that he should not receive a four level enhancement for being an organizer/leader, and that the Court should sentence him for possessing and distributing powder cocaine rather than crack cocaine. Robinson argued that this Court has the authority to reconsider all of these issues on remand because the reversal of his sentence unbundled his sentencing package, allowing the Court to consider these issues anew.

The Court disagrees. Contrary to Robinson's assertions, the Seventh Circuit's remand to this Court was limited to the issue of relevant conduct. Robinson relies upon the view of the majority of the circuits which hold that unless the remand specifically limits a district court's inquiry, the district court can review sentencing matters *de novo. United States v. Caterino,* 29 F.3d 1390, 1394–95 (9th Cir.1994); *United States v. Cornelius,* 968 F.2d 703, 705 (8th Cir.1992); *United States v. Moore,* 83 F.3d 1231, 1235 (10th Cir.1996); *United States v. Sanchez Solis,* 882 F.2d 693, 699 (2nd Cir.1989); *United States v. Campbell,* 168 F.3d 263, 265–66 (6th Cir. 1999).

■ However, the Seventh Circuit has adopted the minority view.[1] In this circuit,

the scope of the remand is determined not by formula, but by inference from the opinion as a whole. If the opinion identifies a discrete, particular error that can be corrected on remand without the need for a redetermination of other issues, the district court is limited to correcting that error. A party cannot use the accident of a remand to raise in a second appeal an issue that he could just as well have raised in the first appeal because the remand did not affect it.

*United States v. Parker,* 101 F.3d 527, 528 (7th Cir.1996), citing *United States v. Polland,* 56 F.3d 776, 779 (7th Cir.1995). The Seventh Circuit has adopted this position because, in its view, a *de novo* review at re-sentencing gives the defendant an unwarranted second bite at the apple, is prohibited by the law of the case doctrine, is implied by the limited nature of every remand, avoids multiple appeals, and avoids unnecessarily prolonging a case. *Id.* The Seventh Circuit's view is, of course, binding upon this Court.

■ In deciding Robinson's appeal, the Seventh Circuit opined that "even viewed deferentially, ... the Loonsfoot statements fail to establish the kind of 'indicia of reliability' upon which a sentencing judge could comfortably rely. For that reason, *we think a new and more critical look at Robinson's relevant conduct is required." United States v. Robinson,* 164 F.3d 1068, 1071 (7th Cir.1999)(emphasis added). As such, the Court finds that its inquiry at re-sentencing is limited to a reconsideration of Robinson's relevant conduct, *i.e.,* the drug amounts for which he should be held accountable. All other issues raised by Robinson in his *pro se* commentary and by his counsel are outside the scope of the Seventh Circuit's remand, and therefore, this Court lacks the authority to consider them.

---

1. The minority view has also been adopted by the Fifth, First, and D.C. Circuit Courts. *E.g., United States v. Marmolejo,* 139 F.3d 528, 531

(5th Cir.1998); *United States v. Whren,* 111 F.3d 956, 960 (D.C.Cir.1997); *United States v. Ticchiarelli,* 171 F.3d 24, 32 (1st Cir.1999).

Furthermore, the law of the case doctrine prohibits this Court from reconsidering issues other than Robinson's relevant conduct at his re-sentencing hearing. This Court considered and rejected most of Robinson's objections at his initial sentencing hearing. In addition, the Seventh Circuit opined that the issues raised on appeal by Robinson other than his relevant conduct issue were meritless: "[h]aving reviewed the record, we conclude that ... the sentencing judge did not err in invoking the gun or role-in-the-offense enhancements. Finally, the testimony at trial clearly established that Robinson distributed crack, not some less devastating species of cocaine." *Robinson*, 164 F.3d at 1071 n. 1.

Accordingly, based upon the Seventh Circuit's finding that Robinson's claims are meritless, the law of the case doctrine prohibits this Court from revisiting Robinson's renewed objections to the Presentence Investigation Report ("PSR").[2] *See Polland*, 56 F.3d at 779 n. 1 (holding that "[w]e held, however, that of his many contentions, only some merited discussion. Though unstated, logic compels that our statement had but one conclusion: the other arguments were meritless. Similar language has been considered to constitute a decision on the merits for purposes of the law of the case doctrine."); *see also United States v. Minicone*, 26 F.3d 297, 299–300 (2nd Cir.1994)(holding that the appellate court's statement that "[w]e hold that [defendant's] claims, including, among others, that he was a minor or minimal participant in the crimes charged, are without merit," without further discussion, precluded the district court from revisiting those issues).

*Fourth*, prior to the start of the re-sentencing hearing, Robinson asked the Court to prohibit the Government's witnesses from testifying. Robinson argued that the Seventh Circuit had anticipated that the Court would hear testimony from Gina Loonsfoot and from her alone. Robinson asserted that the Government was attempting to establish the drug amounts in the PSR through "backdoor" witnesses not previously considered or relied upon by the United States Probation Office in compiling the PSR. Accordingly, Robinson asked the Court to exclude all witnesses other that Loonsfoot from testifying at the re-sentencing hearing.

However, the Court believes that the Seventh Circuit contemplated that, on remand, the Government may call witnesses other than Loonsfoot in order to support the PSR's findings. *See Robinson*, 164 F.3d at 1070 (noting that "[w]hile it's not required that a judge hear personally from *witnesses* under oath at a sentencing hearing about drug quantities, we think it's not a terribly bad idea to do so when the witness is going to provide the basis for, as here, 97 percent of a defendant's relevant conduct.")(emphasis added). The Government represented to the Court that although it attempted to locate Loonsfoot in order to have her testify at the hearing, it was unsuccessful. The Court finds nothing improper about having Robinson's girlfriend[3] and his drug suppliers[4] testify at the hearing in order to establish the amount of drugs for which he should be held accountable, and thus, his motion to excluded all witnesses other than Loonsfoot was denied.

## II. RELEVANT CONDUCT

Therefore, the only issue for the Court to resolve on remand was the drug

---

2. Even if the Court were to reconsider the issues which Robinson and his counsel have raised anew, the Court would echo the Seventh Circuit's footnote in which that court stated that his objections were meritless. *Robinson*, 164 F.3d at 1071 n. 1.

3. Contrary to his assertion, the PSR and the reports upon which the PSR relied did refer-

ence Robinson's girlfriend, Stephanie Whitehead.

4. The Government represented to the Court that although the PSR did not rely upon Tory Clay's (a/k/a "T Money") or Scott Allen's statements, it had previously disclosed those individuals to Robinson.

amounts for which Robinson should be held accountable based upon his convictions and his relevant conduct. U.S.S.G. § 1B1.3. As the Seventh Circuit noted, however, the best that Robinson could hope for is to receive a base offense level of 34, with a final adjusted offense level of 42. *Robinson,* 164 F.3d at 1071. In order to receive a base offense level of 34, the Court would have to find that Robinson dealt with less than 500 grams of crack. If the Court were to make such a finding, then Robinson's sentencing guideline range would be 360 months to life imprisonment. On the other hand, if the Court were to find that Robinson dealt with at least 500 grams of crack, then his sentencing guideline range would be mandatory life.[5]

The Court found that Robinson had dealt with at least 500 grams of crack cocaine. The Court based this conclusion upon the testimony of the witnesses who testified at trial, the law enforcement reports which were presented to the Court at the first sentencing hearing, and the testimony at the re-sentencing hearing presented by Stephanie Whitehead, Tory Clay (a/k/a "T Money"), and Scott Allen.[6]

During the trial, the Government presented evidence that Robinson possessed 32.9 grams of crack on his three counts of conviction (2.1 + 14 + 16.8 grams). *Robinson,* 164 F.3d at 1070. The Government also presented evidence that Robinson possessed large sums of cash. For example, Springfield Police Officers Jerry Castles and J.T. Wooldrige testified that they discovered over $3,000.00 in Robinson's car when he was arrested. Thus, the Court found that Robinson should be held ac-

countable for the 32.9 grams of crack which formed the basis for his convictions.

In addition, the Court again found that Robinson should be held accountable for the 56.7 grams of crack attributed to him by David Alton and the 54 grams of crack attributed to him by Michael Smith. *Id.* The Court believed that Alton's and Smith's statements bore a "sufficient indicia of reliability to support its probable accuracy." *United States v. Taylor,* 72 F.3d 533, 543 (7th Cir.1995). Alton's and Smith's statements that Robinson dealt in large quantities of crack cocaine in Springfield, Illinois, were supported by the evidence presented at trial and by the evidence presented at his re-sentencing hearing. For example, David Alton told the Government that Robinson would occasionally weigh crack cocaine on a Deering brand balance scale; law enforcement officers recovered this type of scale from Robinson's vehicle on November 12, 1996. Accordingly, the Court finds that Robinson should be held accountable for 143.6 grams of crack (*i.e.,* 32.9 from the trial + 56.7 from Alton + 54 from Smith).

The remaining 356.4 plus grams of crack for which the Court held Robinson responsible were attributed to him by the testimony of his girlfriend Stephanie Whitehead and his suppliers Tory Clay and Scott Allen. At the re-sentencing hearing, Whitehead testified that she was Robinson's girlfriend from June 1996 until December 1996. During this time period, Robinson supplied her with crack; he also paid for hotel rooms in Springfield, Illinois, which they shared. Whitehead testified that Robinson's drug dealing was "his business," that he never had a legitimate job (although she observed him with large

**5.** Any finding by the Court that Robinson dealt with at least 500 grams of crack would result in a sentencing guideline range of mandatory life. Robinson has a criminal history category of VI because he is a career offender. U.S.S.G. § 4B1.1. Because he has eight levels of enhancements which must be added to his base offense level, *Robinson,* 164 F.3d at 1071 n. 1., it becomes irrelevant whether his base offense level is 36 (at least 500 grams but less than 1.5 kilograms of crack) or 38

(1.5 kilograms or more of crack) because the highest adjusted offense level which a defendant can receive is 43. U.S.S.G. Chapter 5, Part A, comment, n. 2. A defendant with an adjusted offense level of 43 and a criminal history category of VI has a sentencing guideline range of mandatory life.

**6.** The Court found all three witnesses to be credible.

sums of cash),[7] and that Clay and Allen were his drug suppliers. She also claimed that Robinson always converted the powder cocaine which he received from Clay and Allen into crack and that she watched him convert the powder cocaine into crack using a microwave and baking soda.

In addition, Whitehead asserted that Robinson sent her to Cleveland, Ohio, on July 29, 1996, and to Los Angeles, California, in the fall of 1996 to obtain drugs. Finally, Whitehead testified that between June 1996 and December 1996, Robinson obtained cocaine from Allen on 100 occasions and that on each of those occasions he received between one and three ounces of cocaine.

Likewise, Tory Clay (a/k/a "T Money") testified that Robinson dealt in large quantities of crack cocaine.[8] Clay testified that he supplied Robinson with between six and eight kilograms of powder cocaine between late January or early February 1995 until August 1996. Clay also testified that although he sold Robinson powder cocaine only, on one occasion in May or June of 1996, he purchased two or three ounces of

crack from Robinson while at Earl Bodine's house. Clay claimed to have seen Robinson with large amounts of cash[9] and to have observed him cook powder cocaine into crack while at his brother Mack Robinson's house and while at Rick Carraro's house. Although Clay acknowledged that Robinson smoked crack, he opined that it would have been impossible for Robinson to have consumed all of the drugs supplied to Robinson by him if for no other reason than the cost.[10]

Finally, Scott Allen testified that he supplied Robinson with a minimum of fifteen ounces of cocaine between July 1996 and October 1996. Allen confirmed that Whitehead traveled to Los Angeles, pursuant to Robinson's direction, where she obtained a kilogram of cocaine from Allen's source. Of that kilogram, Robinson purchased six to eight ounces from Allen. Allen asserted that although he was aware that Robinson smoked crack, it would have been impossible for Robinson to have consumed all of the cocaine which Robinson purchased from him because the transactions were too frequent and because Rob-

7. Whitehead observed Robinson with approximately $15,000.00 on one occasion.

8. Prior to Clay's testimony, Robinson made an oral motion to strike Clay as a witness because attorney Jon Gray Noll had represented both Clay and him. Robinson argued that because attorney Noll had represented both, a conflict of interest existed which precluded Clay from offering testimony against him. Although Robinson, through his attorney, asserted that attorney Noll knew of Clay's cooperation against him, Clay denied, while under oath, that there was any cooperation discussed between he and attorney Noll after Jon Gray Noll became his attorney. Moreover, both sides seemed to agree that attorney Noll was unaware that Clay and Robinson knew each other. *See United States v. Hopkins*, 43 F.3d 1116, 1119 (6th Cir. 1995)(a conflict is hypothetical when an attorney does not even know of a potential conflict). Finally, although the Court possessed the authority to excluded Clay's testimony, the Court did not believe that the exclusion of Clay's testimony would be a proper remedy under the circumstances. *See United States v. Messino*, 181 F.3d 826, 830 (7th Cir.1999)(holding that a district court has the discretion to exclude evidence to remedy a

conflict of interest on "rare occasions"). Robinson was convicted on December 4, 1997, and Clay did not retain attorney Noll until April or May of 1998. Clay testified that there was never any cooperation discussed between attorney Noll and himself after he retained attorney Noll to represent him. Clay also stated that once attorney Noll learned that Clay was to testify in Robinson's re-sentencing hearing, attorney Noll declined to speak with him. The Court did not believe that these circumstances constituted the rare occasion where the Court should exclude a witness with relevant information from testifying based upon a potential conflict of interest. Therefore, the Court denied Robinson's oral motion to prohibit Clay from testifying at the re-sentencing hearing.

9. Clay testified that he observed Robinson possess between $10,000.00 and $15,000.00 and four ounces of cocaine on one occasion.

10. Clay would occasionally "front" the cocaine to Robinson. "Fronting" simply means that he would receive the drugs based upon his promise to pay later.

inson did not have a legitimate job to pay for all of the cocaine which was purchased; therefore, Robinson would have to have sold some of the cocaine in order to pay for his purchases.

Based upon all of this evidence, the Court found that the Government had met its burden of establishing by a preponderance of the evidence the factors which determined Robinson's base offense level and relevant conduct. *United States v. Garcia*, 66 F.3d 851, 856 (7th Cir.1995). Although Robinson offered some evidence at the re-sentencing hearing, the Court found that he had not met his burden of proving that the PSR was inaccurate.[11] *United States v. Coonce*, 961 F.2d 1268, 1279–80 (7th Cir.1992); *United States v. Isirov*, 986 F.2d 183, 185–86 (7th Cir.1993). Accordingly, the Court found that based upon his drug activity underlying his counts of conviction and his relevant conduct, Robinson should be held accountable for at least 500 grams of crack.

Finally, Robinson had asked the Court for a downward departure pursuant to U.S.S.G. § 5K1.2 and § 5K2.0. Robinson had asserted that he was entitled to a downward departure pursuant to § 5K1.2 because the Government was penalizing him for his refusal to cooperate. Specifically, Robinson alleged that because he refused to cooperate with the Government, the Government provided a plethora of law enforcement reports to the United States Probation Office which unfairly attributed large drug amounts to him. Moreover, Robinson asserted that he was entitled to a downward departure pursu-ant to § 5K2.0 because his case is so unusual that if fell outside of the heartland of cases within the sentencing guidelines. Robinson claimed that this is so because his criminal history is not extensive enough to warrant such an extended period of incarceration, because the career criminal enhancement overstated his criminal history, because during his incarceration he has made rehabilitative strides including completing educational classes and a drug rehabilitation program, and because his sentence is inherently unfair given his offenses of conviction.

However, before the Court could rule upon Robinson's motion for a downward departure, his counsel moved to withdraw the motion. Upon direct inquiry from the Court, Robinson confirmed that he wished to withdraw his motion for a downward departure. Accordingly, the Court allowed Robinson to withdraw his motion for a downward departure.

## III. CONCLUSION

In summary, the Court found that Robinson had a base offense level of 36 because his offenses of conviction and relevant conduct involved at least 500 grams of crack. U.S.S.G. § 2D1.1(c)(2). In addition, the Court found that Robinson should receive eight levels of enhancements[12]— two for possession of a dangerous weapon (U.S.S.G. § 2D1.1(b)(1)), four for being an organizer or leader of a criminal activity which involved five or more participants (U.S.S.G. § 3B1.1(a)), and two for obstructing justice (U.S.S.G. § 3C1.1)—for a final adjusted offense level of 43.[13] Final-

11. At the re-sentencing hearing, Robinson called two witnesses, Dwight Slooter and Myles Galbreth, Jr. Slooter *testified that he* was Robinson's landlord and his SSI payee. Slooter testified that he never saw any evidence of any drug trafficking in Robinson's apartment and that Robinson never had any money most of the time. However, Slooter's testimony is inconsistent with the evidence *that Robinson was able to purchase several* ounces of cocaine ranging from $900.00 to $1600.00 an ounce on his approximately $200.00 per month SSI check. Furthermore, although Galbreth testified that Robinson was a heavy drug user, his testimony actually sup-ported the PSR's finding in that he testified that he purchased crack from Robinson and that he witnessed Robinson cook powder cocaine with baking soda and water into crack.

12. The Seventh Circuit found that this Court "did not err in invoking the gun or role-in-the-offense enhancements." *Robinson*, 164 F.3d at 1071 n. 1.

13. Again, U.S.S.G. Chapter 5, Part A, comment, n. 2 provides that "[a]n offense level of more than 43 is to be treated as an offense level of 43."

ly, the Court found that Robinson had a criminal history category of VI because he is a career offender. U.S.S.G. § 4B1.1. Based upon these findings, Robinson had a sentencing guideline range of mandatory life.

However, pursuant to U.S.S.G. § 5G1.1(c)(1), Robinson's sentence could not be greater than the statutorily authorized maximum sentence. Here, the jury found Robinson guilty of all three counts charged in the indictment.[14] Counts 1 and 3 carry a maximum sentence of 40 years of imprisonment per count, and count 2 carries a maximum sentence of 20 years. Pursuant to U.S.S.G. § 5G1.2(d), "[i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment."[15] The Court read U.S.S.G. § 5G1.2(d)'s language as mandatory (*i.e.*, "shall"), requiring it to impose consecutive sentences as to each count upon which Robinson has been convicted.

*Ergo*, the Court reimposed the same sentence upon Defendant consisting of 480 months of imprisonment on each of Counts 1 and 3 and 240 months on Count 2, to be served consecutively, for a total of 1,200 months. Upon being discharged from the Bureau of Prisons, Defendant was sentenced to a 5 year term of supervised release on Counts 1 and 3 and to a 3 year term of supervised release on Count 2, to be served concurrently. Defendant was ordered to pay a special assessment of $300.00 immediately. No fine or restitution were ordered. The Court, again, recommended to the Bureau of Prisons that Defendant be placed in a facility with a drug rehabilitation program and as close to Springfield, Illinois, as possible.

---

14. The Seventh Circuit has affirmed Robinson's convictions. *Robinson,* 164 F.3d at 1071.

15. "Total punishment" is defined as the combined length of the sentences and is determined by the adjusted combined offense level. U.S.S.G. § 5G1.2, comment.