In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-4632

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

JOHN W. JOINTER,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 05 CR 79—**Larry J. McKinney**, *Chief Judge.*

ARGUED APRIL 6, 2006—DECIDED AUGUST 9, 2006

Before RIPPLE, MANION and KANNE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* On October 7, 2005, Mr. Jointer pleaded guilty to distribution of and possession with intent to distribute cocaine base ("crack"). *See* 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). He was sentenced to 87 months' imprisonment, a term below the advisory guideline range. The Government now appeals Mr. Jointer's sentence; it submits that the district court exceeded its authority by substituting a 20:1 crack-to-powder cocaine sentencing ratio rather than the 100:1 ratio found in the United States Sentencing Guidelines. The Government further claims that

the sentence is unreasonable. For the reasons set forth in this opinion, we reverse the judgment of the district court and remand the case for resentencing.


# I

# BACKGROUND

## A.  Facts

On three occasions in November and December of 2004, Mr. Jointer made controlled purchases of a total of 46.4 grams of crack from an undercover police officer; these purchases were audio and videotaped.

On December 10, 2004, this undercover officer called Mr. Jointer and asked to meet him in a store parking lot in order to purchase two ounces of crack. Indianapolis police officers met Mr. Jointer at the parking lot and attempted to arrest him, but Mr. Jointer struggled with the police officers and was able to flee on foot. Mr. Jointer was apprehended after he ran across the roadway and was struck accidentally by an assisting police officer's vehicle. Upon his arrest, officers found 22.18 grams of crack on or near his person; they found an additional 10.84 grams during a subsequent search of his residence.

On May 25, 2005, Mr. Jointer was charged in a four-count indictment with three counts of distribution of five grams or more of crack in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii), and one count of possession with intent to distribute five or more grams of crack in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). On October 7, 2005, Mr. Jointer pleaded guilty to the four-count indictment.

Mr. Jointer had a criminal history that included previous convictions for felony theft and receiving stolen property. Also, at the time of the charged offenses he was on probation for a 2004 conviction for possession of cocaine.

## B. District Court Proceedings

The district court conducted a sentencing hearing on November 17, 2005. Before calculating Mr. Jointer's applicable guidelines range, the court noted that the statutory sentencing range was between five and forty years, indicating that Congress is of the "opinion that the crimes that [Mr. Jointer has] committ[ed] are serious, that they impact our society in many ways, and that they cause a great deal of harm." Sent. Tr. at 2.

The court then began the process of calculating the guidelines range. Examining the conduct to which Mr. Jointer pleaded guilty, the court determined that the base offense level was 32. The court then applied a 2-level enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.2, finding that Mr. Jointer had put the officers at risk of injury when he resisted arrest. The court subtracted three levels for acceptance of responsibility, resulting in a total offense level of 31. With Mr. Jointer's criminal history category of III, the applicable guideline range was 135 to 168 months.

Next, the district court turned to a consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a). The district court stated that, in sentencing, the court makes "an attempt to . . . be consistent with what others in the country have done" and what the district court itself has done in the past. *Id.* at 9. The court stated, however, that it did not think that the "notion of consistency" appeared in § 3553(a). *Id.*

The court noted that it considered Mr. Jointer a "street dealer," not an "importer" or "organizer," and expressed its concern that a guidelines sentence might not "reflect the actual conduct of this defendant in the scheme of the drug distribution system." *Id.* at 10; *see also id.* at 9 (stating that, with regards to Mr. Jointer's conduct, "I am not looking at five kilograms of crack cocaine, I am looking at 80 grams.").

The court also observed that Mr. Jointer already had been given a second chance because he was on probation when he committed the crime for which he was now being sentenced. Pointing out that Mr. Jointer had made a series of bad choices, the court stated that the Guidelines would put Mr. Jointer "in the place" that reflects the seriousness of the offense, promotes respect for the law, provides deterrence and administers punishment. *Id.* at 11.

The court next made the following statement:

> Now, I am concerned about a sentencing consistency across the country, and I am concerned about the 100 to 1 disparity of crack cocaine to powder. And I think it is fair for me, at a sentence, to reflect on why it was that the 100 to 1 began and what scientific evidence there was for Congress to conclude that 100 to 1 in the Guidelines . . . was appropriate. There was the fear that the addiction was greater to crack cocaine, that the harm was greater caused by crack cocaine. And, as we have proceeded, as science has proceeded to address those issues over the course of the years there is less and less evidence that there is a difference in the high and there is a difference in the addiction. . . . The literature is replete with evidence that what we thought was—or what Congress thought was an appropriate disparity might not be so wise today because of the better science that we have.

*Id.* at 11-12. Because the court believed the original rationale for the 100:1 ratio was based on assumptions that no longer were accepted, it decided to employ a 20:1 ratio in sentencing Mr. Jointer. The court remarked that it was employing the ratio that the United States Sentencing Commission had recommended "with wisdom and . . . a nod to science." *Id*. at 12. The district court acknowledged that the Government believed that the appropriate ratio was a "congressional issue and not a judicial issue." *Id*. at 13. The court stated that such an argument was "valid," but nonetheless stated that it had the "final say, as to whether or not a sentence is reasonable" for a particular defendant. *Id.* at 13-14.

Applying the 20:1 ratio, the district court recalculated the guidelines calculation and arrived at a level of 25. The resulting range was 70 to 87 months' imprisonment. The court stated that it arrived at this result "by applying the 3553(a)" factors to the guidelines computation. *Id*. at 14. The court stated that the new range could provide deterrence for Mr. Jointer and others. Noting that Mr. Jointer had been involved with drugs for quite some time, it sentenced Mr. Jointer to 87 months' imprisonment, the top of the range. In the court's view, this sentence "reflect[ed] the seriousness of the offense" and Mr. Jointer's criminal history. *Id.* at 15.

## II

## DISCUSSION

### A. The 100:1 Ratio and *Booker*

The Government presents two issues in its appeal to this court: (1) whether the district court committed legal error by sentencing Mr. Jointer under a 20:1 ratio rather than a 100:1

ratio;[1] and (2) whether Mr. Jointer's sentence is unreason-
able. We turn now to the first issue.

In this post-*Booker* world, the basic methodology that must
be employed by a district court in sentencing a defendant is
now well-settled. As a threshold matter, the district court
first must calculate the appropriate sentence under the
applicable version of the United States Sentencing Guide-
lines. *See*, *e.g.*, *United States v. Walker*, 447 F.3d 999, 1007 (7th
Cir. 2006). Although the Guidelines are now advisory, not
mandatory, they serve as a necessary starting point in the
court's deliberations. In making this initial calculation, the
court must acknowledge, and abide by, the policy choices
made by Congress and by the Sentencing Commission. At
this stage of the process, a district court, and indeed this
court on review, must respectfully adhere to the 100:1 ratio
that Congress has decided to implement; the court cannot
substitute a different ratio for the one that Congress has
selected. "[A]fter *Booker* district judges are obliged to
implement the 100-to-1 ratio as long as it remains part of the
statute and the Guidelines." *United States v. Miller*, 450 F.3d

---

[1]  The so-called "100:1" ratio originated in the Anti-Drug Abuse
Act of 1986 (the "Act"), Pub. L. No. 99-570, 100 Stat. 3207 (1986)
(codified in pertinent part at 21 U.S.C. § 841(a)). The Act pre-
scribes a minimum sentence of 10 years for possession of 5,000
grams of cocaine or 50 grams of cocaine base ("crack") and a
minimum sentence of 5 years for 500 grams of cocaine or 5 grams
of crack. *See* 21 U.S.C. §§ 841(b)(1)(A)(ii), (iii); *id.*
§§ 841(b)(1)(B)(ii), (iii). The Sentencing Commission then set
the Guidelines accordingly, adjusting the sentencing ranges
for crack and powder to reflect Congress' decision. For a
more detailed discussion of the history of the 100:1 ratio, see
*United States v. Eura*, 440 F.3d 625, 635-36 (4th Cir. 2006) (Michael,
J., concurring).

270, 275 (7th Cir. 2006);[2] *see also United States v. Lister*, 432 F.3d 754, 762 (7th Cir. 2005) (noting that the 100:1 ratio has been upheld consistently by our circuit and that "*Booker* do[es] nothing to overturn this decision"). After the court has ascertained the appropriate advisory guideline sentence, it then must determine, by an examination of all of the facts and circumstances of the case in light of the criteria set forth in 18 U.S.C. § 3553, an appropriate sentence for the individual defendant. Notably, only after calculating the correct range may a court make reference to the factors specified in § 3553(a) and select a sentence for a defendant that is either within or outside of the advisory guidelines range. *See Walker*, 447 F.3d at 1007.

In this case, the district court did not make a statement categorically rejecting the 100:1 ratio in sentencing all crack defendants in front of the court. Such a statement would have been a quintessential appropriation of legislative authority. On the other hand, a fair reading of the sentencing transcript does not permit us to characterize the district court's action as entirely judicial in nature. The court simply did not tie the 20:1 ratio specifically to Mr. Jointer. Although the court said that it was applying the 20:1 ratio "in this case," it did not articulate a rationale for why 20:1 was more appropriate than any other ratio for Mr. Jointer. Sent. Tr. at 14. It simply disagreed with the legislative facts upon which Congress had based its judgment and substituted other legislative facts for the congressional judgment. Although the court did discuss characteristics specific to Mr. Jointer, such as Mr. Jointer's relatively low-level involve-

---

[2] The district court did not have the benefit of our decision in *United States v. Miller*, 450 F.3d 270 (7th Cir. 2006), at the time that it ruled.

ment in the drug distribution business, the court did not make any defendant-specific findings or statements when discussing the crack-to-cocaine ratio. In sum, although the district court did, at first, correctly calculate the applicable offense level and sentencing range, the court abandoned that correct calculation and inserted its own ratio, 20:1, and then recalculated the applicable offense level and sentencing range. *See* Sent. Tr. at 24 ("I'm not abandoning the Guidelines. I will reconfigure the Guidelines . . . on the conclusions I have drawn by applying the 3553(a) factors, and that would, in fact, leave the total offense level at a 25."). This recalculation was erroneous; it followed neither the statutory language set out by Congress nor the applicable guidelines sections.

A district court "err[s] as a matter of law when it construct[s] a new sentencing range" based on a crack-to-powder range other than 100:1. *United States v. Pho*, 433 F.3d 53, 64 (1st Cir. 2006); *see also United States v. Robinson*, 435 F.3d 699, 701 (7th Cir. 2006) ("Guideline ranges must be determined correctly as a matter of law."). A district court simply cannot substitute its own ratio for the 100:1 ratio. *See United States v. Williams*, No. 05-13205, ___ F.3d ___, 2006 WL 2039993, at *11 (11th Cir. July 21, 2006) ("Congress concluded the 100-to-1 ratio is justified, and the courts have no authority to change that."); *United States v. Eura*, 440 F.3d 625 (4th Cir. 2006); *Pho*, 433 F.3d 53.

Because the district court did not follow the appropriate methodology in sentencing Mr. Jointer, and because that error certainly can not be characterized as harmless error, we must remand the case for resentencing. We have stated that, although the Guidelines are no longer mandatory, "errors in their application remain relevant," *United States v. Skoczen*, 405 F.3d 537, 549 (7th Cir. 2005), and such

errors may require us to remand for resentencing, *see United States v. Chamness*, 435 F.3d 724, 726 (7th Cir. 2006). The Mandatory Sentencing Act, 18 U.S.C. § 3742(f)(1), requires resentencing when a sentence was imposed "as a result of an incorrect application of the sentencing guidelines." This provision of the Mandatory Sentencing Act survives *Booker*, and thus errors in the Guidelines application must be remanded for resentencing even post-*Booker*. *See United States v. Scott*, 405 F.3d 615, 617 (7th Cir. 2005).

To ensure that our holding is received in the proper context, we emphasize that, once a correct guideline sentence has been calculated, the district court must fashion an individual sentence for the defendant before it by evaluating all the facts and circumstances of the case in light of the criteria set forth by Congress in 18 U.S.C. § 3553(a). *See Pho*, 433 F.3d at 65 ("[W]e do not intend to diminish the discretion that, after *Booker*, the district courts enjoy in sentencing matters or to suggest that, in a drug trafficking case, the nature of the contraband and/or the severity of a projected guideline sentence may not be taken into account on a case-by-case basis."); *see also Williams*, 2006 WL 2039993, at *11 (holding that "a sentence below the Guidelines range in a crack cocaine case" may be permissible "so long as it reflects the individualized, case-specific factors in § 3553(a)"). At this later stage of the sentencing proceedings, the Sentencing Commission's detailed reports on crack and cocaine sentencing[3] may have "practical utility" to a district

---

[3] The Sentencing Commission has issued reports to Congress in 1995, 1997 and 2002, recommending that Congress narrow the sentencing disparity between crack and cocaine offenders. The 2002 report was extensive and drew on a variety of different

(continued...)

court's evaluation of the facts and circumstances of the individual case in light of the § 3553(a) factors. *Eura*, 440 F.3d at 634 (Michael, J., concurring). However, as Judge Michael cautioned, the analysis and data contained in the reports cannot *alone* justify a below-guidelines sentence; they can be considered only "insofar as they are *refracted through* an individual defendant's case." *Id.* at 637 (emphasis in original). This is not to say, of course, that a district court must consult the Sentencing Commission reports in any given sentencing. *See United States v. Gipson*, 425 F.3d 335, 337 (7th Cir. 2005) (per curiam) (holding that there is no requirement that a district court take into account the discrepancy between crack and cocaine sentencing to give a below-guidelines sentence). Nor will reliance on the Sentencing Commission reports shield a district court from a reasonableness review on appeal because, *at the core*, the district court must still tie the § 3553(a) factors to the individual characteristics of the defendant and the offense committed. *See Eura*, 440 F.3d at 634 (stating that, in order to deviate from the applicable range when sentencing a crack defendant, "a sentencing court must identify the *individual* aspects of the *defendant's case* that fit within the factors listed in 18 U.S.C. § 3553(a)" (emphasis in original)).

---

[3] (...continued)

sources, including recent literature on the effects and use of cocaine, an empirical study of federal cocaine offenders, public comments, and public hearing testimony from physicians, law enforcement officials, civil rights leaders and academics. *See* United States Sentencing Comm'n, Report to Congress: Cocaine and Federal Sentencing Policy (2002); *see also Eura*, 440 F.3d at 635-36 (Michael, J., concurring) (discussing the various Sentencing Commission reports).

## Conclusion

For the foregoing reasons, the judgment of the district court is reversed, and the case is remanded to the district court for resentencing consistent with this opinion.

REVERSED and REMANDED

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*