UNITED STATES of America, Plaintiff–Appellee,

v.

Tomeica BROESKE, Defendant–Appellant.

No. 98–2124.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 2, 1998.

Decided May 19, 1999.

Thomas P. Schneider, Christopher E. Ware (argued), Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Catherine M. Canright (argued), Superior, WI, for Defendant–Appellant.

Before FLAUM, MANION, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Tomeica Broeske ("Broeske") was convicted by a jury of passing counterfeit money in violation of 18 U.S.C. § 472. She appeals that conviction, asserting error in two jury instructions.

The adverse testimony at trial consisted largely of Broeske's own incriminating statements. Testimony of a Firstar Bank teller and bank records established that

Tomeica Broeske presented $900.00 worth of fifty dollar bills, and received in return an $887.00 money order and a $3.50 deposit in her account at Firstar Bank. The bank later discovered that those bills were counterfeit. Broeske also worked at that bank, and a coworker testified to three conversations with Broeske on three separate days regarding counterfeit money. During the first conversation, Broeske showed her coworker some bills and said "this ain't real," and then stated that she was just "playing." In the second conversation, she told the coworker that she took the money to the bank and now the bank wanted to talk to her about it. She subsequently told the coworker that she had spoken to security and that she was "screwed," and told her coworker "if anybody asks you anything, tell them you don't know anything." The coworker reported the conversation to her team leader. Broeske was questioned by Firstar security agent Lawrence Boothby, and secret service agent Ed Rooney concerning the counterfeit bills, and she told them that she did not know where she obtained that money but had been saving for a car for six months. The next day, she called Rooney and said she wanted to tell him the truth about the counterfeit bills. In a subsequent interview, she informed him that she received the money from her sister, Torerio Broeske ("Torerio"), but maintained that she did not know the bills were counterfeit. At trial, Broeske testified that her sister gave her the money to repay a debt and she did not question where her sister acquired the money. Evidence at trial established that the fifty dollar bills contained three serial numbers, and those serial numbers and the denominations were identical to those on notes passed by her sister Torerio at Bank One a day earlier. The sisters were tried together, and the jury convicted both. Only Tomeica Broeske pursues this appeal.

■ Broeske first contests the district court's modification of Federal Criminal Jury Instruction of the Seventh Circuit 3.09. The instruction tendered by the court read as follows, with the italicized language added to the pattern instruction:

Evidence has been received concerning statements said to have been made by the defendants *to law enforcement agents*. It is for you to determine whether a particular defendant did in fact make such statements. If you find that such defendant did make the statements, then you must determine what weight, if any, you feel the statements deserve. In determining what weight, if any, should be given the statements, you should consider all matters in evidence having to do with the statements, including those concerning the defendant's personal characteristics and the conditions under which the statements were made. Such a statement may not be considered by you as evidence against any defendant other than the one who made it.[1]

The court added the italicized language because it believed the instruction was inappropriate outside the context of statements to law enforcement personnel, and feared that absent the modification it might be applied to the statements made to third parties such as the coworker in this case. After noting that the ambiguity of the instruction has been a recurring problem, the court added the limiting language, and declared that "it may be time for my colleagues on the Seventh Circuit to address this in the context of this particular set of facts." Broeske obliged the court, challenging that modification and arguing that the instruction is not by its language limited to the law enforcement context. Broeske argued that the effect of the instruction was to command greater jury scrutiny of the statements to agent Rooney, which Broeske describes as exculpatory in nature, and lesser scrutiny to her inculpatory statements to her coworker.

1. This last sentence is added by Seventh Circuit Federal Criminal Jury Instruction 3.10, which applies in cases involving multiple defendants.

We now hold that the modification was proper.

Jury Instruction 3.09 derives from 18 U.S.C. § 3501, which sets forth the procedure for determining whether a confession is voluntary. *See* Committee Comment to Seventh Circuit Jury Instruction 3.09. According to § 3501(a), once a judge determines that a confession is voluntary, the confession may be presented to the jury, but the court must instruct the jury to make a determination as to what weight, if any, to give the confession. The term "confession" is defined broadly to include "any self-incriminating statement made or given orally or in writing." [2] 18 U.S.C. § 3501(e). Section 3501 provides a framework for determining whether a confession is voluntary, and sets forth a role for both the judge and the jury. *United States v. Bailey*, 728 F.2d 967, 970 (7th Cir.1984). The statute is replete with references to the law enforcement context in which the issues of coercion and voluntariness arise. *See* § 3501(b) & (c). Moreover, § 3501(d) explicitly excludes statements made voluntarily without interrogation, or absent arrest or other detention. *See United States v. Valdez*, 16 F.3d 1324, 1332–33 (2d Cir. 1994) (subsection 3501(d) limits the applicability of the entire section); *Bailey*, 728 F.2d at 970 (subsection (d) creates an exception to the procedural requirements of section 3501). Therefore, by its express terms, § 3501 does not apply to statements made by Broeske to her coworker, because those statements were made voluntarily, and did not involve interrogation, arrest or detention.

■ Instruction 3.09 was drafted to comply with the mandate of § 3501 that the court instruct the jury to determine what weight should be afforded a confession. That instruction, however, does not distinguish among statements made by the defendant. For that reason, its use in this case was potentially confusing, because on its face it would apply equally to all statements made to third parties, regardless of the context in which they were made. The court correctly recognized that the instruction was meant to address the voluntariness of statements to an investigating agent, as opposed to those made in casual conversation to third parties. Where the voluntariness of the statements is not an issue, the instruction is not appropriate. *See* 2 Charles A. Wright, FEDERAL PRACTICE AND PROCEDURE CRIM.2D § 494, p. 763 (1982); *see also United States v. Blue Horse*, 856 F.2d 1037 (8th Cir.1988); *United States v. Bondurant*, 689 F.2d 1246, 1249–50 (5th Cir.1982); *United States v. Groce*, 682 F.2d 1359, 1366 (11th Cir.1982). Broeske argues that confessions are often made to persons who are not in law enforcement, and that limiting the instruction to the law enforcement context deprived her of a fair trial. That argument, however, misperceives the purpose of § 3501 and instruction 3.09. The instruction is designed to minimize the risk that a jury will rely on a coerced confession. The concern is not with confessions per se, but rather with the voluntariness of the confession. In the present case, Broeske only challenged the voluntariness of her statements to agent Rooney, and does not even now argue that her incriminating statements to other persons were the product of coercion. The modification of the instruction by the court ensured that the instruction was narrowly focused on only those statements to law enforcement agents, and therefore was proper.

In fact, the modification used by the district court is similar in nature to the standard instruction used by other circuits, and recommended by the Federal Judicial Center. For instance, the corresponding instruction in the Eighth Circuit and the pattern instruction by the Federal Judicial

---

2. Although Broeske refers to her statements to agent Rooney as exculpatory, she has never asserted that Jury Instruction 3.09 was inappropriate because her statements did not constitute a confession. Her only challenge has been to the scope of instruction 3.09, specifi-cally whether it should include statements to third parties in addition to those made to law enforcement agents. We disagree, however, that her inconsistent statements to agent Rooney would be considered exculpatory.

Center begin by identifying the person or agency to whom the statement was made. *See* Pattern Jury Instruction 2.1, Eighth Circuit ("You have heard testimony that the defendant (name) made a statement to (name of person or agency)."); Pattern Jury Instruction 36, Federal Judicial Center ("You heard testimony that the defendant made a statement to (e.g.: the FBI) concerning the crime that is charged in this case."). Moreover, the parallel instructions in the Fifth and Eleventh Circuits reference the custodial or coercive context in which the statement was made. See Pattern Jury Instruction 1.26, Fifth Circuit (limiting it to statements made out of court and after a crime has been committed, and requiring the jury to consider, among other factors, defendant's "treatment while under interrogation."); Pattern Jury Instruction 2.1, Eleventh Circuit (limiting it to statements made by a defendant "after being arrested or detained."). The modification by the district court in this case was a proper attempt to limit the instruction to those statements for which it is applicable, and struck the same balance upheld by other circuits.

Moreover, the other instructions given by the court adequately informed the jury of its responsibility to weigh the testimony of the other witnesses and determine credibility. The court issued standard instructions regarding the need for the jurors to weigh the credibility of the witnesses, and to give the testimony whatever weight it deserves. The court further identified a number of factors relevant to that credibility determination, including the appearance of the witness, the manner in which the witness testified, the character of the testimony, and the introduction of contrary evidence. Those instructions accomplished the same purpose as Broeske sought in instruction 3.09, and applied to the testimony of her coworker. Therefore, the court did not err in so instructing the jury.

■ The only remaining issue is Broeske's challenge to the use of an "ostrich" instruction. At trial, the government submitted testimony that Broeske had actual knowledge that the bills were counterfeit. Broeske testified, however, that she received the money from her sister, and did not know that it was counterfeit. She also testified that her sister gave her $900 in fifty dollar bills to repay her for past debts, that she did not ask her sister where it came from, and that her sister stated she could get more of it. When asked if she was curious about where the money came from, Broeske stated "If she can get more money, that's her business. As long as she pay [sic] me, that's all I was concerned about." Broeske's testimony was sufficient to warrant the ostrich instruction, which informed the jury that they could infer knowledge from a combination of suspicion and indifference to the truth. The government need not choose between presenting an actual knowledge case versus a conscious avoidance case, but may present both theories if warranted by the evidence. *United States v. Wilson*, 134 F.3d 855, 868 (7th Cir.1998). Moreover, "[a]n ostrich instruction is appropriate if the defendant 'claims a lack of guilty knowledge and there are facts and evidence that support an inference of deliberate ignorance.'" *United States v. Graffia*, 120 F.3d 706, 713 (7th Cir.1997), *citing United States v. Neville*, 82 F.3d 750, 760 (7th Cir.1996). The evidence in this case supports an inference of deliberate ignorance. Her sister's unexpected receipt of a large amount of money, all in fifty dollar bills, along with representations that she could get more, should have raised suspicion. Broeske's failure to ask any questions about the source of the money in the face of those suspicious circumstances, and in fact her affirmative disregard for that information, indicates indifference to the truth. The court did not err in giving the ostrich instruction.

Accordingly, the decision of the district court is

AFFIRMED.