In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-1491 & 00-1348

United States of America,

Plaintiff-Appellee,

v.

Guy J. Westmoreland,

Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of Illinois.
No. 98 CR 30022--William D. Stiehl, Judge.

Argued September 6, 2000--Decided February 15, 2001

Before Cudahy, Coffey, and Ripple, Circuit Judges.

Cudahy, Circuit Judge. A jury convicted Guy
Westmoreland of conspiracy to distribute a
controlled substance, in violation of 21 U.S.C.
sec. 846. Westmoreland now appeals, arguing that
(1) certain hearsay statements should not have
been admitted into evidence; (2) certain factual
determinations made by the trial judge should
instead have gone to the jury; and (3) his motion
for a new trial should have been granted. We
affirm Westmoreland's conviction, but vacate his
sentence.

I.  BACKGROUND
A.  Facts

     Westmoreland operated a gas station in downtown
St. Louis, Missouri. This station supplied fuel
to Jeffco Trucking, a neighboring over-the-road
trucking company that was owned and operated by
Richard Abeln and his wife, Deborah (for clarity,
we will occasionally refer to members of Abeln's
family by their first names). Abeln also owned a
private airplane and CRT Aviation, an aircraft
hangar and fueling business at the St. Louis
Downtown Parks Airport in Sauget, Illinois.

     In the spring of 1997, Westmoreland and Abeln
entered into the drug distribution business

together. In broad terms, the enterprise appears to have worked as follows. Westmoreland had at least one drug connection in Texas that supplied Abeln with the cocaine and marijuana he imported into the St. Louis area using his private airplane. While Westmoreland initially accompanied Abeln on his flights to Texas, they eventually recruited Anthony Jestis, a pilot and employee of Jeffco Trucking, to make the flights. Once the drugs were flown back to St. Louis, Westmoreland picked them up, sold them and reimbursed Abeln at a rate that was double what Abeln had originally paid.

At some point after the formation of the drug business, Abeln told Westmoreland that he was no longer happy with his marriage. Reasoning that he could not afford to go through a divorce, and learning from Westmoreland that he would be able to hire someone to kill his wife for only $1,000, Abeln decided to arrange for the murder of his wife. According to Abeln's later confession, his wife knew of the drug business, and he told Westmoreland this in order to induce Westmoreland to help him plan the murder. Abeln then plotted his wife's murder with Westmoreland and Deandre Lewis, an employee at Westmoreland's gas station. Finally, on December 27, 1997, Abeln spoke with Lewis, who told him to bring his wife to CRT Aviation at approximately 6:00 p.m. that evening (Westmoreland was conveniently on vacation at the time). That night, Abeln, accompanied by his wife and 11-year-old son, Travis, traveled to the CRT Aviation hangar in Sauget, Illinois, ostensibly to work on Abeln's private airplane. Shortly after the family's arrival at the airport, Abeln's wife was murdered during a staged robbery attempt in the parking lot.

On January 5, 1998, Abeln and his oldest son, Ryan, traveled to Illinois State Police headquarters to discuss establishing a reward for information relating to the murder of Abeln's wife. At the headquarters, police confronted Abeln with inconsistencies in his account of the murder, as well as with the questionable circumstances surrounding the murder; for example, the police were suspicious that a robber would lie in wait for victims at a remote airport. Abeln caved in under the police questioning and confessed to the murder as well as the drug conspiracy, implicating Westmoreland in both. Abeln described many details of his wife's murder in a written confession that he provided the police at the time./1 While Abeln and Ryan were at police headquarters, Westmoreland repeatedly paged Ryan to inquire into the status of Abeln's interview with the police. Finally, while still at headquarters, Abeln made several phone calls to Westmoreland

that he allowed the police to record.

Following his confession to the police, Abeln also made incriminating statements to Ryan. These statements were consistent with what Abeln had related to the police, but provided less detail (for example, Abeln did not discuss drug quantities with Ryan). Abeln also made incriminating statements in prison to Paul Barnett, his cellmate. These statements were also consistent with what Abeln had told the police and Ryan, but again omitted any reference to drug quantities.

The police investigated Abeln's claims, and on January 6, 1998, a search pursuant to a warrant was conducted at Jeffco Trucking. Approximately 550.9 grams of cocaine were found in a GMC Suburban sport utility vehicle, which, according to several Jeffco employees, was driven only by Westmoreland. Also, on February 10, 1998, Illinois State Police interviewed Tony Jestis, the pilot for Abeln who had flown to Texas for Abeln several times. Jestis told the police that he had flown for Abeln, but denied knowledge of the purpose of his flights. However, Jestis admitted to occasionally bringing Westmoreland as a passenger on his flights and, when Westmoreland was not flying with him, to picking up packages while in Texas that Westmoreland would then pick up from Jestis in St. Louis.

B.  District Court Proceedings

Westmoreland and Abeln were indicted and set for joint trial. The trial was severed after the government received permission to seek the death penalty against Abeln. As a result, Westmoreland was tried alone, with conspiracy to distribute a controlled substance in violation of 21 U.S.C. sec.sec. 841(a)(1), 841(b)(1)(A) and 846, as the only count against him. Following a trial--during which many of Abeln's and Jestis' hearsay statements were admitted into evidence-- Westmoreland was convicted by a jury on August 20, 1998.

At sentencing, the trial court determined that Westmoreland was responsible for approximately 8.5 kilograms of cocaine. While this quantity subjected Westmoreland to a statutory maximum sentence of life imprisonment under 21 U.S.C. sec. 841(b)(1)(A), the Sentencing Guidelines prescribed a sentence of only 121-151 months. Nonetheless, after determining that Westmoreland had participated in the murder of Abeln's wife in furtherance of the drug conspiracy, the court imposed a life sentence on Westmoreland under the Sentencing Guidelines murder cross-reference found at U.S.S.G. sec. 2D1.1(d).

Following his conviction and sentencing, Westmoreland appealed to this court. In that appeal, Westmoreland contested the admission of Abeln's hearsay statements at his trial. Westmoreland also disputed the amount of cocaine that was found to constitute his relevant conduct and the application to him of the Sentencing Guidelines murder cross-reference. Westmoreland lastly alleged that his sentence violated Fifth Amendment due process guarantees, as well as the Eighth Amendment prohibition against cruel and unusual punishment.

While Westmoreland's first appeal was pending, he was informed by the United States Attorney that Abeln had stated during his plea discussions that his wife did not know of the drug conspiracy. Instead, Abeln claimed that he had lied to Westmoreland about his wife's knowledge to induce Westmoreland to participate in her murder. Upon learning this news from the United States Attorney, Westmoreland requested leave from this court to file a petition for a new trial in the district court. On July 20, 1999, this court remanded the case to the district court so that the court could entertain Westmoreland's motion for a new trial based upon the new evidence.

Westmoreland filed a motion for a new trial, as well as a supplemental motion for a new trial relying upon the Supreme Court's June 10, 1999 decision in Lilly v. Virginia, 527 U.S. 116 (1999), for the purpose of presenting a Confrontation Clause argument. The district court denied both of Westmoreland's motions, and he appeals this denial and pursues his original appeal from the jury verdict and sentence.

II. DISCUSSION

In this combined appeal, Westmoreland challenges: (1) the admissibility of Abeln's and Jestis' various hearsay statements; (2) the amount of cocaine found to constitute his relevant conduct for sentencing purposes; (3) the use of the Sentencing Guidelines murder cross-reference, U.S.S.G. sec. 2D1.1(d), in the calculation of his sentence; and (4) the denial of his motions for a new trial.

A. Hearsay Statements

At trial, hearsay statements by both Abeln and Jestis were admitted under Federal Rule of Evidence 804(b)(3) as statements against interest. Westmoreland challenges the admission of these statements under both the text of Rule 804(b)(3) and the Confrontation Clause, U.S. Const.

Determining whether hearsay testimony admitted under Rule 804(b)(3) violates the Confrontation Clause requires a threshold determination of whether the evidence was properly admitted under Rule 804(b)(3) in the first instance. See United States v. Castelan, 219 F.3d 690, 694 (7th Cir. 2000). "For the 804(b)(3) exception to apply, the proponent of an inculpatory hearsay statement must show that (1) the declarant is unavailable to testify at trial; (2) the statement was against the declarant's penal interest; and (3) corroborating circumstances bolster the statement's trustworthiness." United States v. Shukri, 207 F.3d 412, 416 (7th Cir. 2000). Further, under Williamson v. United States, the district court must consider whether each statement contained in a confession, and not just the confession taken as a whole, was genuinely self-inculpatory. 512 U.S. 594, 600-01 (1994). Thus, each statement in a narrative confession must be examined "to determine whether it tended to subject the declarant to criminal liability." United States v. Nagib, 56 F.3d 798, 804 (7th Cir. 1995). The admission of hearsay statements under Rule 804(b)(3) is reviewed for abuse of discretion. See Shukri, 207 F.3d at 416.

Even if a statement is properly admissible under the text of Rule 804(b)(3), the statement may not be admitted into evidence if it violates the defendant's Confrontation Clause rights. The Confrontation Clause analysis requires that hearsay statements admitted under Rule 804(b)(3) be accompanied by "particularized guarantees of trustworthiness." Ohio v. Roberts, 448 U.S. 56, 66 (1980). As this court interprets the reasoning of the plurality in Lilly, these guarantees "must be inherent in the circumstances of the testimony itself; the fact that other evidence corroborates the testimony in question does not suffice." Castelan, 219 F.3d at 695. There is a presumption of unreliability that attaches to a codefendant's confession, see Lee v. Illinois, 476 U.S. 530, 543 (1986), and the plurality in Lilly noted that "[i]t is highly unlikely that the presumptive unreliability that attaches to accomplices' confessions that shift or spread blame can be effectively rebutted when . . . the government is involved in the statements' production, and when the statements describe past events and have not been subjected to adversarial testing." 527 U.S. at 137. The full scope of Lilly is yet to be defined, but as this court stated in Castelan, "at least one treatise has explained that in Lilly 'all nine justices of the Supreme Court indicated, more or less explicitly, that the admission of custodial statements to law enforcement personnel against penal interest . .

. whether or not constituting a confession, that incriminate another person violates the confrontation clause when admitted against such other person in a criminal case.'" Castelan, 219 F.3d at 695 (citing 31 Charles Alan Wright, Arthur R. Miller & Michael H. Graham, Federal Practice and Procedure sec. 6742 (2d ed. 2000)). The admission of hearsay statements under the Confrontation Clause is reviewed de novo. See Castelan, 219 F.3d at 694.

1.

We first discuss the hearsay statements made by Abeln to the police, Barnett and Ryan. While neither party takes issue with the district court's determination that Abeln was unavailable to testify at trial because he was facing his own capital trial--the first prong of the Rule 804(b)(3) analysis--the parties differ in their assessment of whether Abeln's statements were truly self-inculpatory, as well as whether they contained sufficient guarantees of trustworthiness. Westmoreland takes particular issue with the following statements by Abeln, arguing that they were not truly self-inculpatory: that Westmoreland was the party with the drug connection (told to both the police and Barnett); that Westmoreland distributed the drugs (told to the police, Ryan and Barnett); that the getaway car used during the murder of Abeln's wife was a beat-up, blue Dodge pick-up truck (told to the police); that Westmoreland owed Abeln $7,000 (told to the police); that Westmoreland told Abeln he could take care of Abeln's wife (told to the police, Ryan and Barnett); that Deandre Lewis was the shooter, worked for Westmoreland and was offered five ounces of cocaine by Westmoreland for the hit (told to Barnett, and partially to the police and Ryan).

All of Abeln's statements, with the exception of the reference to the pick-up truck,/3 were properly admissible under the text of Rule 804(b)(3). "[S]tatements that demonstrate a declarant's inside knowledge of a crime are also against the declarant's penal interest." United States v. York, 933 F.2d 1343, 1360 (7th Cir. 1991), overruled on other grounds by Wilson v. Williams, 182 F.3d 562 (7th Cir. 1999); see also United States v. Barrett, 539 F.2d 244, 252 (1st Cir. 1976). In addition, a statement that implicates the declarant in a larger conspiracy tends to subject the declarant to criminal liability and thus is a statement against interest. See York, 933 F.2d at 1360. This is so because a member of a conspiracy is liable for any co-conspirator's act committed in furtherance of the conspiracy even if he did not commit the act himself. Thus, because the following

statements illustrate Abeln's knowledge of the conspiracy and the acts committed in furtherance of the conspiracy, they qualify as statements against interest: Westmoreland had the drug connection; Westmoreland sold the drugs; Westmoreland owed Abeln $7,000; Westmoreland told Abeln he could "take care of" Abeln's wife; Deandre Lewis, one of Westmoreland's employees, shot Abeln's wife and was offered five ounces of cocaine by Westmoreland for the murder.

More compellingly, none of the above statements can be said to be an effort by Abeln to shift blame. By admitting to a role in both the drug conspiracy and his wife's murder, Abeln surely knew that he was facing a prison term so lengthy (if not a capital sentence) that any effort to shift blame would not help him. Instead, Abeln's statements merely fill in gaps in his story and reveal Abeln's detailed knowledge of the drug conspiracy, in which he played a major role. Consequently, the district court did not abuse its discretion in admitting Abeln's hearsay statements under Rule 804(b)(3).

As noted, however, it is not enough that Abeln's statements were properly admissible under Rule 804(b)(3); they must also survive analysis under the Confrontation Clause. Under the reasoning of the plurality in Lilly, the Confrontation Clause requires that hearsay statements which do not fall within a firmly rooted hearsay exception (and statements implicating a co-defendant do not fall within such an exception) must include "particularized guarantees of trustworthiness." See Lilly, 527 U.S. at 124-25 (citing Ohio v. Roberts, 448 U.S. 56, 66 (1986)).

Not all of Abeln's hearsay statements survive a Confrontation Clause analysis. As noted, this court's decision in Castelan indicates that "particularized guarantees of trustworthiness" do not exist with respect to statements made while in police custody. Accordingly, Abeln's statements to the police fail to survive a Confrontation Clause analysis because Abeln was in custody when he made them. However, Abeln's statements to his son, Ryan, and to his cellmate, Barnett, meet Lilly's requirement that "particularized guarantees of trustworthiness" be present. Lilly does not change the fact that statements to close family members have "particularized guarantees of trustworthiness." See United States v. Tocco, 200 F.3d 401, 416 (6th Cir. 2000) (statement made to son in confidence survives Lilly analysis). And, as noted by this court, jailhouse confessions to cellmates are also trustworthy and admissible under Rule 804(b)(3). See United States v. Hamilton, 19 F.3d 350, 357 (7th Cir. 1994).

Consequently, while the admission of Abeln's custodial statements violated Westmoreland's Confrontation Clause rights, the admission of Abeln's other hearsay statements did not. Nonetheless, because we conclude below that the improper admission of Abeln's statements was harmless, Westmoreland's conviction stands.

2.

Westmoreland also challenges the admission of Jestis' statements. We begin by examining whether Jestis' statements are admissible under the text of Rule 804(b)(3), which requires that the declarant be unavailable to testify and that the declarant's statements be against the declarant's interest. Neither party disputes the district court's finding that Jestis was unavailable to testify because he asserted his rights under the Fifth Amendment. However, Westmoreland contends that none of Jestis' statements were truly against Jestis' penal interest because Jestis asserted that he was unaware of the unlawful purpose of his flights, was told that he was doing nothing illegal and was flying merely because he needed the money. Westmoreland further contends that Jestis did not make statements against his interest by admitting acquaintance with Westmoreland and Abeln or by admitting to receiving a package from Abeln's son, Ryan.

While Westmoreland is correct to note that Jestis disclaimed all knowledge of Westmoreland's drug distribution business, the lower court nonetheless properly admitted Jestis' statements because these statements were against Jestis' self-interest under a conscious avoidance theory of prosecution. A conscious avoidance theory of prosecution applies "where there is evidence that the defendant is associated with a group, but where there is also evidence that the defendant consciously was avoiding knowledge of the illegal nature of the group's activity." United States v. Diaz, 864 F.2d 544, 550 (7th Cir. 1988); see also United States v. Broeske, 178 F.3d 887, 890 (7th Cir. 1999). Jestis' statements subjected him to possible prosecution under a conscious avoidance theory since Jestis admitted association with Westmoreland and Abeln and admitted flying for them, but disclaimed any knowledge of the purposes of the flight. Jestis' statements could thus implicate him in the conspiracy, and the district court did not abuse its discretion in admitting his statements under Rule 804(b)(3).

Nonetheless, because Jestis' statements were made while under interrogation by the police, their admission--like the admission of Abeln's police custody statements--violated the Confrontation Clause. The inadmissibility of

Jestis' statements follows from the same Lilly analysis applied to Abeln's hearsay statements. However, there is an additional reason to exclude Jestis' statements from evidence: statements made in conscious avoidance, by definition, involve a declarant who admits to association with a criminal enterprise but denies knowing the business of the enterprise. See Broeske, 178 F.3d at 890. Such self-exculpatory statements are essentially an attempt to exonerate the declarant at the potential expense of the declarant's accomplices, particularly when they were made in police custody. Jestis' statements are thus a classic example of the kind of blame-shifting statement with which the Confrontation Clause is particularly concerned--he admitted nothing that might harm him, but plenty that might harm Westmoreland and Abeln.

3.

Even if hearsay statements are improperly admitted into evidence at trial, a conviction will not be set aside if erroneous rulings under both Rule 804(b)(3) and the Confrontation Clause are harmless. See Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986). Errors are deemed harmless if we can determine beyond a reasonable doubt that the error did not contribute to the verdict. See Neder v. United States, 527 U.S. 1, 15-16 (1999). Whether an error is harmless beyond a reasonable doubt depends upon factors such as "1) the importance of the witness's testimony in the prosecution's case; 2) whether the testimony was cumulative; 3) whether other evidence corroborated or contradicted the witness's material testimony; and 4) the overall strength of the prosecution's case." United States v. Ochoa, 2000 WL 1511696, at *7 (7th Cir. Oct. 12, 2000) (citing Van Arsdall, 475 U.S. at 684). Here, the bulk of the challenged hearsay statements do not even relate to the drug conspiracy with which Westmoreland was charged. Instead, they relate to Deborah Abeln's murder. While these statements might be challenged as irrelevant to the drug conspiracy or unduly prejudicial (and thus inadmissible under Federal Rules of Evidence 402 and 403), Westmoreland has not challenged them on these grounds. Accordingly, it is difficult to see how the hearsay statements relating to Deborah Abeln's murder might have changed the jury's verdict since the jury was charged only with determining Westmoreland's role in the drug conspiracy, and not his role in the murder.

With regard to the hearsay statements relating to Westmoreland's role in the drug distribution conspiracy, there was abundant evidence of Westmoreland's guilt with respect to that charge.

Westmoreland's phone records revealed numerous calls to Texas; one of the recorded phone conversations between Abeln and Westmoreland reveals that Westmoreland was worried about "the drug end of it"; and cocaine was found in Westmoreland's car. In addition, the admitted hearsay testimony was, to some extent, cumulative since the statements Abeln made to Barnett and Ryan were properly admissible and they largely duplicated the statements Abeln made to the police and Jestis. Consequently, any error in admitting hearsay statements against Westmoreland was harmless, and Westmoreland's conviction for conspiracy to distribute a controlled substance-- the only count he was charged with--will not be set aside.

B.  Sentencing

Westmoreland contests two aspects of his sentence: the drug quantity attributed to him and the murder cross-reference imposed on him.

1.

Westmoreland advances two arguments--one factual and one constitutional--with respect to his contention that the district court should not have attributed 8.5 kilograms of cocaine to him at sentencing. Because we try to avoid constitutional questions if we can, we first address Westmoreland's factual argument. See United States v. Bloom, 149 F.3d 649, 653 (7th Cir. 1998). Under the Sentencing Guidelines, Westmoreland's sentencing range would have been 63-78 months had he been sentenced only for the 550.9 grams of cocaine found in his automobile. Westmoreland argues that the district court improperly relied on Abeln's hearsay testimony to attribute 8.5 kilograms of cocaine to him, thus bringing his sentencing range (ignoring the cross-reference for murder) to 121-151 months. The determination of quantity for sentencing purposes is reviewed for clear error. See United States v. Hatchett, 31 F.3d 1411, 1418 (7th Cir. 1994).

Westmoreland contends that the hearsay testimony used to determine drug quantity was so untrustworthy as to render the lower court's reliance on that testimony clear error. However, even though Abeln's statements are not admissible evidence under Lilly, a district court is not bound by the rules of evidence in determining drug quantity for sentencing purposes. See United States v. Berkey, 161 F.3d 1099, 1102 (7th Cir. 1998). In fact, "a sentencing judge can consider a wide range of information in reaching sentencing determinations provided it is reliable or, as we have said, provided it includes

'sufficient indicia of reliability to support its probable accuracy.'" United States v. Robinson, 164 F.3d 1068, 1070 (7th Cir. 1999) (quoting United States v. Taylor, 72 F.3d 533, 543 (7th Cir. 1995)).

Here, the court relied exclusively on Abeln's hearsay statements to the police to add eight kilograms to the quantity of cocaine attributed to Westmoreland. We have determined above that Abeln's description of drug quantity was inadmissible to the jury under Lilly. We are not aware of any cases that examine whether a statement that is inadmissible under Lilly because it does not possess "particularized guarantees of trustworthiness" might nonetheless possess "sufficient indicia of reliability" for sentencing purposes. Because a standard that calls for "sufficient indicia of reliability" appears, on its face, somewhat less stringent than a standard requiring "particularized guarantees of trustworthiness," it is possible for a sentencing court to consider hearsay statements that may not be admitted into evidence under Lilly. As such, the court properly considered Abeln's hearsay statements for sentencing purposes. Abeln's statement that he transported eight kilograms of cocaine was clearly against his self-interest--not only did it subject Abeln to criminal prosecution, but it also subjected him to the possibility of a life sentence under 21 U.S.C. sec. 841(b)(1)(a). Abeln's statement to the police was also consistent with his other statements. For example, Abeln told Barnett that he had earned $168,000--a substantial amount of money that is consistent with the scale of Abeln's and Westmoreland's operations--on his last trip to Texas. Further, the testimony of Abeln and Jestis, coupled with the numerous phone calls between Westmoreland and a residence in Texas, establish Westmoreland's knowledge of--and participation in--a conspiracy that involved numerous flights to Texas for the purpose of importing controlled substances into the St. Louis area. Surely, members of the conspiracy did not fly to Texas merely to pick up a few grams of cocaine. Accordingly, the court did not err in attributing 8.5 kilograms of cocaine to Westmoreland for sentencing purposes./4

2.

We must next decide whether the district court's drug quantity determination survives constitutional scrutiny. At the time of trial, it was well-settled in this circuit, as well as other circuits, that drug quantity was merely a sentencing factor under sec. 841, and not an element of the crime of possession with intent to

distribute. See, e.g., United States v. Jackson, 207 F.3d 910, 920 (7th Cir. 2000) (and cases cited therein); United States v. Thomas, 204 F.3d 381, 384 (2d Cir. 2000); United States v. Williams, 194 F.3d 100, 107 (D.C. Cir. 1999); United States v. Martinez, 151 F.3d 384, 395 (5th Cir. 1998); United States v. Silvers, 84 F.3d 1317, 1320 (10th Cir. 1996); United States v. Lindia, 82 F.3d 1154, 1161 n.6 (1st Cir. 1996); United States v. Abanatha, 999 F.2d 1246, 1251 (8th Cir. 1993); United States v. Chapple, 985 F.2d 729, 731 (3d Cir. 1993); United States v. Uwaeme, 975 F.2d 1016, 1018 (4th Cir. 1992); United States v. Revel, 971 F.2d 656, 659 (11th Cir. 1992); United States v. Sotelo-Rivera, 931 F.2d 1317, 1319 (9th Cir. 1991); United States v. Moreno, 899 F.2d 465, 474 (6th Cir. 1990).

Section 841's distinction between sentencing factors and elements was called into doubt by two cases that relied heavily upon statutory interpretation: Jones v. United States, 526 U.S. 227 (1999) ("serious bodily injury" and "death" under federal carjacking statute, 18 U.S.C. sec. 2119, were elements of offense), and United States v. Castillo, 120 S.Ct. 2090 (2000) (term "machine gun" in statute states element of offense defined by 18 U.S.C. sec. 924(c)(1)). In both of these decisions, the Supreme Court interpreted ambiguous statutes and found that provisions which enhanced a defendant's sentence were elements of the crime defined by the statutes, not mere sentencing factors. By relying on statutory interpretation in Jones and Castillo, the Court was able to avoid the constitutional problem that would result if Congress removed elements of a crime from the purview of the jury by treating them as sentencing factors.

While Castillo's impact on sec. 841 did not come before us, we decided that Jones did not change the long-held view that drug quantity is a sentencing factor based upon the clear demarcation between the substantive offense and the penalty provisions of sec. 841. See Jackson v. United States, 207 F.3d 910, 920 (7th Cir. 2000), cert. granted in part, and judgment vacated by 121 S.Ct. 376. Section 841(a), entitled "Unlawful acts," defines the offense of possessing a controlled substance with the intent to distribute it. Section 841(b), entitled "Penalties," establishes several statutory maximums depending on the drug type and quantity involved in the crime. For example, the drug types and quantities enumerated in sec. 841(b)(1)(D) subject a defendant to a maximum possible sentence of five years imprisonment, while the drug types and quantities enumerated in sec. 841(b)(1)(A) subject a defendant to a

maximum possible sentence of life imprisonment. Because of the separation between the proscription of the substantive offense and the penalty provisions in sec. 841, we held that drug quantity is merely a sentencing factor, and not an element of the crime proscribed by sec. 841. After Apprendi v. New Jersey, 120 S. Ct. 2348 (2000), however, we were no longer able to construe the structure of sec. 841 in a manner that avoided the constitutional problem arising when a statute's structure removes certain aspects of a crime from the purview of the jury.

The defendant in Apprendi was convicted in state court under a New Jersey statute that prohibited the possession of a firearm for an unlawful purpose. At sentencing, the trial judge applied New Jersey's hate crime law, which allowed for an extended term of imprisonment (beyond the statutory maximum for the firearm possession alone) if the trial judge determined, by a preponderance of the evidence, that the defendant acted "with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." N.J. Stat. Ann. sec. 2C:44-3(e). Finding that application of the hate crime law violated the defendant's due process rights under the Fourteenth Amendment, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 120 S.Ct. at 2362-63. Apprendi thus requires that facts which increase a defendant's sentence beyond the statutory maximum must both be charged in the indictment and submitted to the jury for a determination under the reasonable doubt standard.

In light of Apprendi, we could no longer look to the clear demarcation between the elements of the crime defined by sec. 841 and the penalty provisions of that section as a means of avoiding the constitutional issues raised by the placement of drug quantity determination in the hands of the sentencing judge. It is now clear that, if drug quantity is determined by the sentencing judge rather than by the jury, a defendant's rights are violated when the sentence dictated by the drug quantity is greater than the lowest, unenhanced statutory maximum prescribed by sec. 841(b). See United States v. Nance, No. 00-1836, 2000 WL 1880629 (7th Cir. Dec. 29, 2000). Thus, when drug quantity is not charged in the indictment or submitted to the jury, the statutory maximum under sec. 841(b) must be determined without reference to drug quantity. For example, when a defendant is charged with

possession with intent to distribute cocaine and quantity is not charged in the indictment or submitted to the jury, the statutory maximum sentence is 20 years imprisonment. See sec. 841(b)(1)(C).

Many of our sister circuits have reexamined sec. 841 in light of Apprendi and have concluded, as we have, that sections 841(b)(1)(A) and 841(b)(1)(B), the enhanced statutory maximum penalty provisions of sec. 841, "may not be utilized for sentencing without a finding of drug quantity by the jury." United States v. Rogers, 228 F.3d 1318, 1327 (11th Cir. 2000); see also United States v. Angle, 230 F.3d 113, 123 (4th Cir. 2000); United States v. Doggett, 230 F.3d 160, 164-65 (5th Cir. 2000); United States v. Nordby, 225 F.3d 1053, 1059 (9th Cir. 2000); United States v. Aguayo-Delgado, 220 F.3d 926, 933 (8th Cir. 2000). In addition, the Supreme Court has ordered several other circuits to reconsider their decisions not following this rule in light of Apprendi. See, e.g., Jones v. United States, 120 S.Ct. 2739 (2000) (mem.) (reconsidered in light of Apprendi by 235 F.3d 1231 (10th Cir. 2000)); Blue v. United States, 2000 WL 1451376 (U.S. 2000) (mem.); Gibson v. United States, 2000 WL 1451396 (U.S. 2000) (mem.); Burton v. United States, 2000 WL 798515 (U.S. 2000) (mem.); Wims v. United States, 2000 WL 366962 (U.S. 2000) (mem.). We have similarly been ordered to reconsider several of our decisions in light of Apprendi. See Jackson v. United States, 121 S.Ct. 376 (2000) (mem.) (reconsidered in light of Apprendi by No. 98-2696, 2001 WL 21355 (7th Cir. Jan. 10, 2001)); Hughes v. United States, 121 S.Ct. 423 (2000) (mem.); Whitt v. United States, 121 S.Ct. 423 (2000) (mem.). While we recognize that the Supreme Court's summary remand is not strong or clear precedent, the remand in these cases "indicates the possible or even likely view of the Court that Apprendi does change the traditional interpretation that drug quantity is always a sentencing factor . . . ." United States v. Angle, 230 F.3d 113, 123 (4th Cir. 2000).

We followed the above line of precedent in United States v. Nance, No. 00-1836, 2000 WL 1880629 (7th Cir. Dec. 29, 2000), thus overruling our cases indicating that drug quantity is a sentencing factor to the extent that those cases are undermined by the rule of Apprendi, requiring that any fact which increases a sentence beyond the prescribed statutory maximum must be charged in the indictment and submitted to the jury./5 See, e.g., United States v. Hardin, 209 F.3d 652, 657 (7th Cir. 2000); United States v. Richardson, 130 F.3d 765, 780 (7th Cir. 1997); United States v. Garcia, 66 F.3d 851, 859-60 (7th Cir. 1995);

United States v. Trujillo, 959 F.2d 1377, 1381 (7th Cir. 1992); United States v. Levy, 955 F.2d 1098, 1106 (7th Cir. 1992); United States v. McNeese, 901 F.2d 585, 605 (7th Cir. 1990).

3.

We next decide how Apprendi affects Westmoreland's sentence. Because Westmoreland is challenging the constitutionality of the district court's drug quantity determination for the first time on appeal, we review the challenged aspects of the lower court proceedings only for plain error. See Fed. R. Crim. P. 52(b); see also United States v. Olano, 507 U.S. 725, 730 (1993); United States v. Ross, 77 F.3d 1525, 1538 (7th Cir. 1996). Under the plain error standard, we will not reverse unless the defendant demonstrates that (1) there was error; (2) the error was plain; and (3) the error affected the defendant's substantial rights. See Fed. R. Crim. P. 52(b); Olano, 507 U.S. at 732-35. If the defendant meets these three requirements, we may correct the error if, "in our discretion, we find the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Ross, 77 F.3d at 1538 (discussing Olano, 507 U.S. at 736-37).

Having set forth the legal context and standard of review that guide us, we turn to an analysis of Westmoreland's Apprendi claim. As noted, the plain error analysis requires us first to determine whether any error was committed below. As in similar cases, the government concedes that Apprendi applies to sec. 841, and that an error has been committed. See, e.g., United States v. Swatzie, 228 F.3d 1278, 1282 (11th Cir. 2000). However, "[w]hile . . . government concessions are often useful to a court, they do not, at least as to questions of law that are likely to affect a number of cases in the circuit beyond the one in which the concessions are made, relieve this Court of the duty to make its own resolution of such issues." Strauss v. United States, 516 F.2d 980, 982 (7th Cir. 1975). Apprendi's application to sec. 841 is already proving to be a frequent basis for appeal in this circuit and we therefore continue by describing why the government was correct to concede the first two prongs of the plain error analysis.

In deciding whether error exists with regard to the drug quantity finding in this case, we must bear in mind that Apprendi requires drug quantity--when it subjects a defendant to an enhanced sentence--to be both charged in the indictment and submitted to the jury. Here, it is clear that drug quantity was sufficiently charged

in the indictment. "The test for determining the sufficiency of the indictment is whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial." United States v. Garcia-Geronimo, 663 F.2d 738, 743 (7th Cir. 1981). However, while an indictment must allege all of the elements necessary to prove a violation of the statute, "[i]t is not necessary to spell out each element, [so long as] each element [is] present in context." United States v. Smith, 223 F.3d 554, 571 (7th Cir. 2000); see also United States v. Martinez, 981 F.2d 867, 872 (6th Cir. 1992) (indictment is constitutionally sufficient if it alleges the appropriate section of the United States Code, even if it does not allege the express element required). Here, Westmoreland was charged with a violation of sec. 841(b)(1)(A), which provides for a maximum sentence of life imprisonment, and was thus on notice that he might be sentenced to life imprisonment. Charging Westmoreland with the enhanced penalty provision thus allowed Westmoreland to prepare his defense sufficiently with respect to the quantity-driven enhanced penalty provision of sec. 841. The language of the indictment--alleging over one year of drug distribution activity in a large area--while perhaps not strong enough on its own, lends further context to the drug quantity charged in the indictment. Certainly, Westmoreland could not understand this allegation of a year of distribution activity in a large area to involve only minute amounts of cocaine. Accordingly, there was no error under Apprendi with regard to the indictment.

However, as noted, it is not sufficient that the relevant factor be charged in the indictment; the jury must also be instructed on that factor. Here, drug quantity was not even mentioned in the jury instructions even though the drug quantity ultimately attributed to Westmoreland by the sentencing judge subjected Westmoreland to a sentence that exceeded the 20-year statutory maximum prescribed by sec. 841(b)(1)(C). Thus, Westmoreland's rights were violated by the district court's failure to submit drug quantity to the jury. Accordingly, the first two elements of the plain error analysis--requiring an error that is plain--are satisfied.

Next, we must determine whether the error affected Westmoreland's substantial rights. An error will affect substantial rights if the error "affected the outcome of the district court proceedings." United States v. Olano, 507 U.S. 725, 734 (1993); see also United States v. Franklin, 197 F.3d 266, 271 (7th Cir. 1999). While the Court in Olano acknowledged that

"[t]here may be a special category of forfeited errors that can be corrected regardless of their effect on the outcome," 507 U.S. at 735, this case does not involve such an error. See United States v. Kerley, 838 F.2d 932, 938-39 (7th Cir. 1988) (failure to instruct jury on element of crime is not per se reversible error). While "failure to instruct clearly on the elements of the offense is not always plain error," United States v. Perez, 43 F.3d 1131, 1139 (7th Cir. 1994) (citing United States v. Kerley, 838 F.2d 932, 938 (7th Cir. 1988)), "the gravity of such an error makes reversal the usual outcome in such circumstances." Perez, 43 F.3d at 1149. However, Westmoreland bears the burden of showing that the error was prejudicial. See Olano, 507 U.S. at 734.

Westmoreland has shown that the outcome of the district court proceedings would have been substantially different had the question of quantity gone to the jury. As noted, two pieces of evidence supported the determination of Westmoreland's relevant conduct with regard to drug quantity: the approximately 550.9 grams of cocaine found in his automobile and the eight kilograms of cocaine that Abeln, in his confession to the police, claimed to have imported. But Abeln's confession to the police should not have been in evidence and should thus not have been before the jury. Consequently, the only evidence of drug quantity presented to the jury would have been the approximately 550.9 grams of cocaine found in Westmoreland's car--a quantity allowing for a sentence of five to 40 years imprisonment under sec. 841(b)(1)(B), but not a life sentence. There was some additional admissible evidence relating to drug quantity (for example, Abeln's statement to Barnett that he had netted $168,000 on his last drug transaction), but the jury received no instruction on this evidence and there was thus no way for the jury to derive a drug quantity from this dollar figure. Accordingly, because the jury would have been justified in only attributing a quantity of approximately 550.9 grams to Westmoreland, Westmoreland's rights were substantially affected.

The gravity of this error is further illustrated by the mischief resulting from the application of the Sentencing Guidelines murder cross-reference, U.S.S.G. sec. 2D1.1(d). Because the district court found that Westmoreland was responsible for 8.5 kilograms of cocaine, he was subject to, and ultimately sentenced to, life imprisonment. It is true that his sentence for the 8.5 kilograms of cocaine alone (not including the murder cross-reference) would have resulted in a sentence of only 121-151 months

imprisonment, well within the 20-year statutory maximum imposed for cocaine offenses without a quantity enhancement. But a plain error analysis of Apprendi's application to Westmoreland's sentence does not call for such a parsing of the sentence. What matters is that Westmoreland was subject to a 20-year maximum sentence (or, as noted below, possibly a 40-year maximum sentence) and his actual sentence exceeded this.

We lastly conclude that, under the fourth prong of the plain error analysis, the error in Westmoreland's case "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Olano, 507 U.S. at 732. We will find that an error so affects judicial proceedings when an issue is closely contested and supported by conflicting evidence. See United States v. Mims, 92 F.3d 461, 466 (7th Cir. 1996) (failure to ensure a jury finding on an essential element "undermined the essential fairness and integrity of the trial"). Here, the issue of drug quantity was closely contested and supported only by limited evidence. Accordingly, the court's failure to charge the jury with a quantity determination resulted in a substantially longer sentence than would likely have resulted if the jury had been charged with determining quantity. Had the jury been so charged--and had the jury been denied the benefit of Abeln's hearsay statements to the police--it would not have known that Westmoreland was alleged to have been involved with the importation of eight kilograms of cocaine. As such, the jury could not have credited Westmoreland with 8.5 kilograms of cocaine, as did the district court. Instead, the jury could reasonably have found that Westmoreland was at most responsible for 550.9 grams of cocaine, the quantity found in his automobile. Such a finding would have subjected Westmoreland to a maximum sentence of 40 years of imprisonment under sec. 841(b)(1)(B). Accordingly, the failure to instruct the jury is plain and reversible error.

4.

The application of the Sentencing Guidelines murder cross-reference, U.S.S.G. sec. 2D1.1(d), is reviewed for clear error. See United States v. Meyer, 2000 WL 1770672, at *6 (7th Cir. Dec. 4, 2000). Constitutional questions relating to the cross-reference are reviewed de novo. See United States v. Meyer, 157 F.3d 1067, 1081 (7th Cir. 1998).

Application of the cross-reference to Westmoreland was not clear error. As with all sentencing issues, "[a] sentencing judge is not bound to the Federal Rules of Evidence when

considering information to determine the defendant's sentence." United States v. Berkey, 161 F.3d 1099, 1102 (7th Cir. 1998). The judge "may rely on hearsay and statements from co-conspirators so long as he finds the statements reliable." Id. However, the facts upon which a sentence is based must bear a "sufficient indicia of reliability to support their probable accuracy." United States v. Burke, 148 F.3d 832, 835 (7th Cir. 1998). As noted, this is a less stringent standard than Lilly's requirement that "particularized guarantees of trustworthiness" exist before hearsay statements against interest can be admitted into evidence. Therefore, it is possible that hearsay statements not properly before the jury may nonetheless be considered at sentencing.

Westmoreland argues that the hearsay and circumstantial evidence considered by the lower court in applying the Guidelines cross-reference does not prove Westmoreland's alleged role in the murder of Abeln's wife by a preponderance of the evidence. However, as noted by the district court, Abeln repeatedly made consistent statements to various persons about Westmoreland's involvement in Deborah Abeln's murder. Even more incriminating were Westmoreland's own statements. In his taped conversations with Abeln, Westmoreland stated that the police were lying when they said that they had recovered Deborah's jewelry, which had in fact been taken when she was murdered. Westmoreland also stated that "they can't do shit to me cause I was, they know I was out of the country . . . . All I do, all I'm doing is concealing evidence from what I know, okay?" Westmoreland also assured Abeln that the alleged murderer would not talk: "[H]e ain't gonna say a word. Do, do you think he want to go to jail?" These statements bear "sufficient indicia of reliability," and the district court correctly considered them for sentencing purposes. Accordingly, the district court did not err in determining that Westmoreland had participated in the murder of Deborah Abeln in furtherance of the drug conspiracy.

It was also not a violation of Westmoreland's constitutional rights to subject him to the cross-reference. "[S]entencing judges may look to the conduct surrounding the offense of conviction in fashioning an appropriate sentence, regardless of whether the defendant was ever charged with or convicted of that conduct, and regardless of whether he could be." United States v. Dawn, 129 F.3d 878, 884 (7th Cir. 1997). The only gloss applied to this rule by Apprendi is the requirement that facts not set forth in an indictment and charged to a jury may not be used

to increase a defendant's sentence beyond the prescribed statutory maximum. We are mindful that the rule of Apprendi may eventually be extended to the requirement that any fact that increases a defendant's sentence must be so presented. See Apprendi, 120 S.Ct. at 2369-79 (Thomas, J. and Scalia, J., concurring). However, the majority in Apprendi did not extend its rule in this manner, and we decline to extend Apprendi in such a fashion today.

Apprendi applies only to facts that increase a defendant's sentence beyond the prescribed statutory maximum. However, under the Sentencing Guidelines, it is not possible to apply the cross-reference in a manner that produces a sentence greater than the statutory maximum applicable to the charged crime. See U.S.S.G. sec. 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."); see also U.S.S.G. sec. 5G1.1(c) ("In any other case, the sentence may be imposed at any point within the applicable guideline range, provided that the sentence (1) is not greater than the statutorily authorized maximum sentence . . . ."). Therefore, even though the murder cross-reference will always allow for a life sentence, the Guidelines require that the cross-reference only increase the defendant's sentence at most to the statutory maximum associated with the charge on which the defendant was convicted. Thus, if a defendant to whom the 20-year statutory maximum under sec. 841(b)(1)(C) applies is subject to a 10-year sentence under the Guidelines for the drug charge alone, the murder cross-reference may be applied to increase the defendant's sentence only to 20 years imprisonment, but no more. Accordingly, the strictures of Apprendi do not affect a sentencing judge's decision to enhance a defendant's sentence under U.S.S.G. sec. 2D1.1(d) because this Guidelines section cannot act to enhance the sentence beyond the statutory maximum associated with the crime of which the defendant was convicted. See Talbott v. Indiana, 226 F.3d 866, 869 (7th Cir. 2000) ("Apprendi does not affect application of the relevant-conduct rules under the Sentencing Guidelines to sentences that fall within a statutory cap.").

C.  Motion for a New Trial

A denial of a motion for a new trial is reviewed for abuse of discretion. See United States v. Fruth, 36 F.3d 649, 652 (7th Cir. 1994). When faced with a claim that a witness testified falsely, a district court should grant a new trial when:

(a) The court is reasonably well satisfied that the testimony given by a material witness is false.

(b) The jury might have reached a different conclusion absent the false testimony or if it had known that testimony by a material witness was false.

(c) The party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.

United States v. Reed, 986 F.2d 191, 192-93 (7th Cir. 1993). However, "mere speculation or conjecture is insufficient to warrant a new trial." United States v. Reed, 2 F.3d 1441, 1451 (7th Cir. 1993). Westmoreland does not satisfy the requirements for a new trial based upon the false testimony of a witness. Abeln's false testimony related only to the murder of his wife, not to the drug conspiracy. More importantly, given the overwhelming evidence against Westmoreland (including, for example, the cocaine found in Westmoreland's car), Westmoreland would have been convicted on the charge of conspiracy to distribute drugs even absent Abeln's allegedly false testimony regarding Westmoreland's understanding of the reason that Abeln's wife was to be murdered. Consequently, the district court did not abuse its discretion by denying Westmoreland's motions for a new trial.

III.  CONCLUSION

The government has requested that we grant it the discretion to pursue either resentencing or retrial. However, because the only error relating to Westmoreland's conviction--the improperly admitted hearsay statements-- is harmless, only resentencing is appropriate, not retrial. See United States v. Nordby, 225 F.3d 1053, 1062 (9th Cir. 2000).

For the foregoing reasons, the judgment of conviction is Affirmed and the sentence is Vacated. The case is Remanded for further proceedings consistent with this opinion.


/1 Through the testimony of two Illinois State Police officers, the following hearsay statements of Abeln (as summarized in Westmoreland's brief) were admitted at trial:

A. The police should check out Westmoreland in the killing of [Abeln's] wife.

B. [Abeln] and Westmoreland were involved in the killing of [Abeln's] wife.

C. [Abeln] and Jestis would fly Abeln's plane to southern Texas, receive cocaine and marijuana from a white guy who brought it up from Mexico, and would give it to Westmoreland in St. Louis to distribute.

D. [Abeln] flew down one time and brought back 8 kilos of cocaine and bundles of marijuana.

E. Westmoreland's motive was that he owed Abeln money for a drug debt.

F. When Abeln told Westmoreland he was having trouble with his wife and couldn't afford a divorce, Westmoreland said to him he could get someone taken care of for $1,000.

G. Westmoreland owed Abeln $7,000 for the drug business and helping him would wipe out the debt.

H. Westmoreland was the "hook" and had the drug connection, and Abeln would make $17,000 per kilo.

I. Abeln received his money after Westmoreland sold the drugs.

J. The getaway car was a blue Dodge pick-up, perhaps a "beater."

Appellant's Br. at 21-22 (citations omitted).

/2 The government argues that Westmoreland both improperly raised a Confrontation Clause argument in his supplemental motion for new trial and waived his right to raise the argument on appeal by failing to raise it in his opening brief in Appeal No. 99-1491. The district court appears to have exceeded the scope of this court's remand by entertaining arguments based upon Lilly in Westmoreland's supplemental motion for a new trial. However, this court will still consider Lilly because, contrary to the government's position, Westmoreland did not fail to raise a Confrontation Clause argument in his opening brief in Appeal No. 99-1491, and Lilly clearly governs the hearsay issues raised in this appeal.


/3 Abeln's description of the pick-up truck that was used for the murders is certainly not a statement against interest, nor any other form of admissible hearsay. However, the description of the pick-up truck is a minor detail and its admission is harmless error, as described below.

/4 Westmoreland is correct to note that in United

States v. Robinson we stated that "it's not a terribly bad idea" to hear personally from witnesses instead of relying upon hearsay testimony. 164 F.3d 1068, 1070 (7th Cir. 1999). However, the remainder of Robinson (finding that hearsay statements relied upon for sentencing purposes did not include sufficient indicia of reliability) does not help Westmoreland. The hearsay statements in Robinson were nonsensical and clearly contrary to the other evidence. Here, Abeln's statements were generally consistent, both internally and with the remainder of the evidence.

/5 However, we note that Apprendi does not apply when drug quantity is used to reach a sentence that falls beneath the statutory maximum. See United States v. Talbott, 226 F.3d 866, 869 (7th Cir. 2000). "Thus, for example, when the statutory maximum is life imprisonment, Apprendi is beside the point." Id. Further, while we believe that Apprendi may, under certain circumstances, also require that drug type (as opposed to only drug quantity) be charged in the indictment and submitted to the jury in certain cases, that issue is not before us and we therefore do not decide it.